CAMILLE TURCOTTE *vs.* UNITED ELECTRIC
RAILWAYS COMPANY.

ELMER TURCOTTE *vs.* SAME.

APRIL 25, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. These are actions of trespass on the case for negligence. They were heard together in the superior court before a jury which returned a verdict for the plaintiff in each case. The defendant's motions for new trials were denied by the trial justice and each case is before us on defendant's exception thereto.

The actions arose out of an accident which occurred September 15, 1946 on Atwells avenue in the city of Providence

when an automobile belonging to the plaintiff Camille Turcotte and a trolley car owned and operated by the defendant company collided. When the accident happened the automobile was being driven by Camille's brother Elmer Turcotte, who was alone therein. Hereinafter for convenience we shall refer to him as the plaintiff. He sues to recover for alleged personal injuries whereas Camille seeks to recover for the property damage to his automobile.

From the evidence it appears that the accident took place on a Sunday afternoon shortly after one o'clock. The day was fair and there was little or no traffic on the highway. In order to locate a friend the plaintiff had parked his brother's automobile near the curb on the southerly side of Atwells avenue heading easterly. Whether any other automobiles were parked nearby on that side of the street was in dispute. Failing to find his friend the plaintiff returned in a short time to the automobile and prepared to drive it away. What then took place is in sharp conflict.

Evidence for the plaintiff was to the effect that he started the automobile and after driving it a few lengths forward and away from the curb the engine stalled at a time when the left side was approximately a foot away from the nearest rail of defendant's car track in Atwells avenue. Plaintiff attempted several times to get the automobile moving but each time he was able to start the engine it immediately stalled again. Although the automobile was on a down grade it would not move and the plaintiff thought that possibly its brakes were locked. While he was trying to get it started he saw a trolley car of the defendant company coming along the track behind him some appreciable distance away and proceeding in the same direction in which he was heading. This trolley car continued to aproach and without changing speed struck the extreme left rear of the automobile, scraping its side and coming to a stop in such a position that the sides of the two vehicles were touching. As a result the automobile was substantially damaged and the plaintiff's back was injured.

His testimony was in the main corroborated by that of a witness who was on Atwells avenue across from the place of the accident.

From evidence submitted on behalf of the defendant it appears that as the trolley car approached a point about opposite the rear of the parked automobile and was fairly close thereto the automobile started to back up approximately parallel to the curb. After thus moving for five or six feet the rear of the automobile suddenly swung out toward the trolley car striking the latter near its right front door, and the trolley car continued some eight or ten feet before coming to a stop. Two witnesses who were passengers therein substantially supported the above testimony of the operator of the car.

The defendant argues that the verdict of the jury on the question of liability was not supported by a preponderance of the evidence; that the trial justice apparently misconceived his duty in passing upon its motions for new trials; and that his decision because of its nature and the statements contained therein should not be accorded by this court the weight usually given to such a finding. The defendant urges that although the decision, which is rather brief, terminates with the statement that the trial justice believed that "the jury arrived at a fair verdict in both these cases, and did substantial justice between the parties," the portion of the decision preceding those words shows that he did not exercise his own independent judgment, as was his duty, in deciding the motions before him. For example, defendant points out that among other things he referred to the alleged stalling of the automobile as being not very probable although a possibility; to the fact that the verdicts could have been arrived at from the evidence without, however, expressing any opinion whether, in the exercise of his judgment, the jury should have reached such verdicts; and to his belief that the cases turned on the question of the credibility of the witnesses, which was for the jury to

determine, but without stating his own opinion on that question.

After considering his decision as a whole it is our conclusion that the position taken by the defendant is sound and that the trial justice did not give this court the benefit of his independent judgment. Accordingly we cannot give to such decision the persuasive force it ordinarily would have. It therefore becomes necessary for us as a court of last resort, under our well-established rule, to independently examine the evidence without the help which we would usually receive from the findings of the trial justice. In performing our duty in such circumstances we do not apply the same rule which governs a trial justice when he is called upon to exercise his independent judgment in disposing of such a motion, but we are obliged to examine the evidence to determine whether it *strongly* preponderates against the verdict returned by the jury. *Monacelli* v. *Hall*, 71 R. I. 55; *Bradley* v. *Brayton*, 61 R. I. 44.

In the instant cases we have therefore examined the transcript for the above purpose. The evidence was sharply conflicting on the issue of how the accident happened and there was evidence which if believed by the jury, as apparently was the case, supported the plaintiff's contentions in that connection. In these cases the credibility of the witnesses was of considerable importance but we do not have the advantage of seeing them and hearing them testify. While it seems clear that on the testimony submitted reasonable minds might differ as to the cause of the accident, nevertheless after consideration we find that we are unable to say that the evidence taken as a whole *strongly* preponderates against the verdicts on the question of liability, and therefore they are not disturbed on that ground.

As to the damages, it was agreed by the parties in the case brought by Camille Turcotte that they amounted to $293.39, and the jury's verdict was for that amount. In the case brought by Elmer Turcotte the verdict was for

$1750, and the defendant argues that such sum was grossly excessive. The trial justice in denying the motion for a new trial in that case did not refer to the matter of damages, although one of the defendant's grounds therein was that the verdict was excessive.

The evidence shows that at the time of the accident the plaintiff was employed as a guard at the Narragansett race track and for such services was receiving $9 a day for a six-day week. His injury consisted of a sacroiliac strain muscular in nature, and without any bone injury. His doctor strapped his back, applied heat pads and physiotherapy, and prescribed a belt. The doctor also expressed the opinion that by the first of the year 1947 the plaintiff was able to perform light work. As a guard his work was not heavy but called for considerable walking and standing.

It appears from the evidence that after the accident the plaintiff attempted to work but was unable to do so continuously and remained away from the race track for about thirteen days, the meet ending early in October 1946. He did not work thereafter until June 1947 when the Narragansett race track opened again. The evidence shows that the doctor's bill was $90; the belt and liniments cost $45; and thirteen days' absence from work at $9 a day amounted to $117, making a total of $252 for his actual monetary loss.

The plaintiff also attempted to show that he had made arrangements to act as guard at the Pascoag race track in this state upon the termination of the meet at the Narragansett race track in October 1946. The evidence on this point is indefinite and it does not appear how long the Pascoag meet was to continue or what he was to receive for such work. Plaintiff further testified that he could obtain employment as a guard at tracks in other states during the winter and that he could also work for a man named Stevens who apparently was a caterer at race tracks.

All of the testimony relating to these matters was vague and of a highly speculative nature as there was nothing to show convincingly that he intended to do such work, that

he actually had it to do, or how much he was to receive therefor. It does appear that he had not been with Stevens and had not been employed at tracks outside the state since about 1940. He also claimed that he made certain chemicals and sold them himself, but no proof was furnished of any financial loss in this connection due to the accident. We are of the opinion that none of the evidence thus referred to was sufficiently clear and definite to form the basis of a claim for damages by the plaintiff. Further, a nervous condition mentioned in the testimony, which may have influenced the amount of the jury's award, clearly was not connected with the accident. We find therefore that the damages of $1750 awarded by the jury in the case brought by Elmer Turcotte were grossly excessive.

Plaintiff, however, is entitled to recover his actual financial loss and in addition to be recompensed for the pain and suffering caused by the injury to his back. Such an item of damage must depend on the facts and circumstances of the case under consideration and must be determined by the exercise of sound and reasonable judgment. In this case the injury to plaintiff's back was not serious although it was more or less painful and restricted his movements to some extent, and while it may have lasted for several months it was improving constantly. As indicated above, his monetary loss was $252 and we are of the opinion that in the circumstances a total recovery of $750 would adequately compensate him for all damages that were reasonably proved and would do justice between the parties. The defendant's exception to the decision of the trial justice denying its motion for a new trial is therefore sustained on the ground that the damages awarded the plaintiff Elmer Turcotte are grossly excessive.

In the case brought by Camille Turcotte the defendant's exception is overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

In the case brought by Elmer Turcotte the defendant's exception is sustained, and the case is remitted to the

superior court for a new trial on all issues unless the plaintiff on or before May 5, 1949 shall file in the office of the clerk of the superior court a remittitur of all the damages in excess of $750. If such remittitur is filed, the superior court is directed to enter judgment for the plaintiff on the verdict as reduced by the remittitur.

*Frank C. Cambio,* for plaintiffs.

*Earl A. Sweeney, Frank J. McGee,* for defendant.